EARNEST ROBERTS, by W. K. ROBERTS, Next Friend, Respondent, v. THE CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 8, 1906.

1. **PRACTICE: Instruction: Undisputed Fact.** Where an issue is proven beyond peradventure and the parties treat as uncontroverted, it is not necessary to instruct the jury concerning such issue.

2. **RAILROADS: Farm Crossing: Gate Fastening.** In an action against a railroad company for the killing of a horse which strayed through a gate on to the right of way, an instruction, submitting the issue as to whether the gate was provided with proper latch or hook, in the language of the statute, was sufficient, where instructions were given on behalf of defendant properly defining what was a necessary latch or hook and permitting a verdict for defendant in case the fastenings on the gate were reasonably secure.

3. ———: ———: **Instructions.** And in such case, an instruction, asked by the defendant, directing the jury to find for it if the gate was opened by a passer-by or by third parties and permitted to remain open, was properly refused when there was no evidence tending to show the gate was left open in that manner.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby*, Judge.

AFFIRMED.

*N. W. Morrow* and *Scarritt, Griffith & Jones* for appellant.

(1). To maintain his case on this theory, it was necessary for plaintiff to have shown (a) that he was either the owner of the land adjacent to the railroad, or that his horse was at the time lawfully upon said land (Harrington v. Railroad, 71 Mo. 384; Rinehart v. Railroad, 80 S. W. 910); (b) that this was a necessary farm crossing (section 1105, R. S. 1899); and (c) that the gate did not have such a fastening as was a hook or latch within the meaning of the statute. Plaintiff did submit all these matters to the jury in his said instruction, but the same were submitted as questions of law, or as mixed questions of law and fact. In this the instruction is clearly erroneous. Miller v. Railroad, 56 Mo. App. 78; Rowen v. Railroad, 82 Mo. App. 24; Chalcraft v. Railroad, 113 Ill. 86; Hudson v. Railroad, 55 Mo. 525. (2) At the end of plaintiff's testimony defendant offered a demurrer to the evidence, and at the end of all the evidence asked a peremptory instruction. We contend that the court erred in overruling same. Plaintiff not only failed to prove his theory of the case as submitted in his first instruction, but all the testimony taken together, we confidently submit, tends rather to show that the plaintiff has no case against the railroad company. In other words, we contend that the proof tends to show that the gate and fastening were reasonably sufficient. Whether or not there was

substantial evidence upon which plaintiff might go to the jury; and also what all the evidence taken together tends to prove is, of course, a question of law for the court. In Hillman v. Railroad, 99 Mo. App. 275, 73 S. W. 220, the court say: "While it is the province of the jury to determine all questions of fact, it is likewise the province of the court to determine all questions of law, especially whether there is any evidence entitling the submission of issues of fact to the jury. O'Malley v. Railroad, 113 Mo. 319, 20 S. W. 1079; Boland v. Railroad, 36 Mo. 484."

*James W. Reynolds* for respondent.

(1) The appellant, therefore, cannot be heard to complain that the instruction was not so favorable to the respondent in this respect as it might have been nor that they found affirmatively on issues that might well have been assumed as true without being submitted to the jury at all. Wentworth v. Duffy, 68 Mo. App. 515; Suman v. Inman, 6 Mo. App. 384. Inasmuch as there was no contradiction of plaintiff's positive evidence on these points, no prejudice or possible damage was done to the defendant's case by the instruction submitting these issues to the jury, therefore no reversible error was committed. Harrington v. Sedalia, 98 Mo. 587, 12 S. W. 342; LaForce v. Ins. Co., 43 Mo. App. 533; Prewitt v. Railroad, 134 Mo. 624; Cooper v. Railroad, 39 Mo. App. 489. Besides the contention that this instruction is fatally defective for the reason that it did not define "hook or latch" is also untenable as no definition of the term was necessary, but if further definition were necessary defendant in order to avail itself of this failure must have asked an instruction defining the term. State v. Kinder, 184 Mo. 297, 83 S. W. 964. (2) The contention that the instruction is erroneous because it did not submit the question as to the sufficiency of

the fastening on the gate instead of the question whether the gate had a hook or latch is also untenable because whatever defect, if any, this instruction has in this regard, as was the case in Cooper v. Railroad, supra, is supplied by appellant's instructions numbered 2 and 3, which told the jury they could not find for the plaintiff if the fastening on the gate was reasonably secure. So all instructions in the cause when considered together certainly properly declared the law in the case. Weston v. Mining Co., 105 Mo. App. 709, 78 S. W. 1044; Land & Lumber Co. v. Markham & Duckett, 96 Mo. App. 56, 75 S. W. 1121; Chambers v. Chester, 172 Mo. 489, 72 S. W. 904. Nor did the court commit any error in refusing appellants refused instruction numbered 4 for the simple reason that there was no evidence on which to base such an instruction. Duncan v. Railroad, 91 Mo. 71, 3 S. W. 835.

STATEMENT.—Plaintiff, a minor, suing by his next friend, seeks to recover the value of a mare owned by him valued at $135, and double damages therefor under section 1105, R. S. 1899. The mare was so seriously injured by the engine and cars of defendant in Buffalo township, Pike county, as to render her worthless and was therefore killed by defendant's section men.

The negligence on which the suit was predicated is the failure of the railroad company to provide and maintain a sufficient hook or latch on its gate, parcel of the right of way fence adjacent to the inclosure in which the mare was at pasture. It is claimed that by reason of such insufficient fastening, the gate was opened by the wind and the mare escaped through the same onto the railroad track and received the injuries complained of. The evidence tends to prove that the defendant's railroad runs east and west through Buffalo township, in said county, and passes through and divides a tract of land in the possession of Mr. Ince, about one and one-half miles west of the city of Louisiana. The tract was

inclosed and in meadow, a portion of the same lying on either side of the railroad track. A farm crossing and gates on either side thereof were necessary within the contemplation of the statute, and therefore the railroad company had, many years before, provided the same; that no one used the gates other than Mr. Ince and the plaintiff's mare was lawfully at pasture on the lands. All of these facts are uncontroverted in the case. The evidence with respect to the gate in question is that it is an ordinary swinging gate on hinges, which had been in use for several years. The gate opened toward the meadow rather than toward the railroad. The post, to which it was fastened by means of a chain, leaned toward the railroad track so that, when closed, the bottom of the gate only touched the post for about a foot or eighteen inches thereon. There was no hook or latch on the gate in the ordinary acceptance of those terms; that is to say, there was no hook and staple in which to fasten it; nor was there an ordinary sliding latch. The fastening provided was a chain probably eighteen inches in length, one end of which was securely bolted through the upright bars on the end of the gate, the other end of which chain, in order to fasten the gate, hooked over a small flat piece of iron driven into the gate-post. This small piece of iron over which the chain was hooked, is described by the witnesses as having formerly had a hook on the end of it, but it had been broken off and there remained in the post of the original hook, a small flat piece of iron, perfectly straight, about as wide as two fingers which protruded from the post, variously described as from seven-eighths to one and one-half inches. On the afternoon prior to the mare's injury in the night plaintiff visited the pasture, and found the gate open. He closed it, and seeking to make the fastening more secure, drove an ordinary railroad spike into the post immediately at the side of the flat piece of iron with a stone about as large as his fist, and hooked the

chain over both the spike and the small flat piece of iron.
Having thus, in his own mind, rendered the fastening
secure, he departed. During the night a rain visited the
locality. It was stormy and a heavy wind prevailed.
About daybreak the following morning, plaintiff's father
visited the pasture, found the gate open, the several
horses on the railroad track and the mare in question
fatally injured from a collision with the train. Hoof
prints of the horses passing from the pasture through
the gate onto the railroad track were apparent. Wit-
ness remained until Mr. Muff, the section foreman, came
to his work, and described the fastening on the gate
that morning, as follows:

"A little piece of iron driven in there three-quarters
or probably an inch long, probably as wide as my fingers,
and it didn't stick out very far from the post. . . .
About one inch from the post is my judgment on it.
. . . It was perfectly straight, that little catch.

"Q. Was there any other fastening in that gate-
post at that time that the chain could hook on? A.
No, sir, there was nothing in it.

"Q. What was there in that post, if anything, in
the way of a fastening outside of this piece of iron you
have described? A. There was nothing.

"Q. You did not pull out the spike your son drove
into that post, did you? A. No, sir.

"Q. Did you ever see that upright spike in there?
A. No, sir."

Witness also said that he turned the horses into the
pasture, closed the gate and hooked the chain over the
small flat piece of iron mentioned. So it is apparent
that had the spike been there, he would have noticed it.
It is palpable that the railroad spike could not have
been driven very far into the post with a stone as large
as a man's fist.

The defendant's evidence tends to show that the
flat piece of iron mentioned, over which the chain

hooked, was the fastening furnished by it, and it varies from that of the plaintiff only to the extent of showing that a railroad spike was also in the post at some time in the afternoon after the accident. It then seemed to be driven well into the post and so remained for several months, and was with much difficulty removed by and at the request of defendant a few days prior to the trial in order to introduce it in evidence in the case, which was done. The finding of the jury, however, settled this question.

It was further shown in evidence that the gate had frequently been found open after a heavy wind; the inference clearly being that the gate was blown open by the wind on the occasion in question. The mare was shown to have a reasonable market value at the time of $135.

The court refused a peremptory instruction requested by the defendant, and among others, gave the following instruction on the part of plaintiff:

"1. The court instructs the jury that it was the duty of the defendant prior to and at the time of the accident referred to in evidence in this case to erect and maintain lawful fences on the sides of its railroad where the same passed through or along or adjoining inclosed or cultivated lands or uninclosed lands, with openings and gates therein to be hung and having hooks or latches so that they could be easily opened and shut, at all necessary farm crossings of its road, and if you believe from the evidence that the plaintiff's mare on or about September 18, 1904, while lawfully upon inclosed lands through which defendant's road ran in Buffalo township, Pike county, Missouri, entered upon the defendant's railroad track through an open gate in defendant's fence along its railroad at a necessary farm crossing where the defendant if such is the fact had failed or neglected to erect and maintain a gate having a latch or hook thereon, and that the same was not

inside the limits of any city, town or village nor at the crossing of any public road and that said mare while on said railroad track was struck by defendant's passing locomotive or cars and was thereby so crippled and mangled as to become entirely worthless.

"And if you further believe that said mare got upon said track and was crippled as above stated by reason of the failure and neglect, if any, of the defendant to provide and maintain a gate having a latch or hook as aforesaid, then your verdict must be for the plaintiff for the value of the mare at the time of the injury."

After having given several proper instructions, the court refused the following requested by defendant:

"The court instructs the jury that if you believe from the evidence that plaintiff, Ernest Roberts, closed and securely fastened the gate in question about five o'clock on the afternoon before the night on which his horse was killed, and thereafter some other party passed through said gate and left it open or neglected to properly fasten it so that it afterwards came open, without defendant's knowledge or consent, then your verdict should be for the defendant, the Chicago & Alton Railway Company."

The jury found the issues for the plaintiff, assessed his damages at $135, which amount the court doubled under the statute, and defendant appeals.

NORTONI, J. (after stating the facts).—The material portions of the statute are as follows:

"Every railroad corporation formed or to be formed in this State, and every corporation to be formed under this article, or any railroad corporation running or operating any railroad in this State, shall erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands, with openings and gates therein, to be hung and have latches or hooks, so that

they may be easily opened and shut, at all necessary farm crossings of the road, for the use of the proprietors or owners of the land adjoining such railroad and also to construct and maintain cattle guards, where fences are required, sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad," etc. [Sec. 1105, R. S. 1899.]

It also provides a penalty of double damages for losses occasioned by reason of the omission of the duties thereby imposed.

The principal argument advanced for a reversal of the judgment is that it devolved upon the plaintiff to show and the jury to find: first, that plaintiff either owned, or that his mare was lawfully upon, the lands from which she came onto the railroad tracks, as has been frequently decided. [Herrington v. Railway, 71 Mo. 384.] Second, that the gate in question was a necessary farm crossing on the railroad: and third, that the gate was not furnished with such fastenings as amounted to a sufficient hook or latch within the meaning of the statute; that these facts must be affirmatively proved by the plaintiff and found by the jury as well as the facts that the plaintiff owned the mare and that the want or insufficiency of the hook or latch on the gate was the proximate cause of her death; and it is insisted by appellant that even though the evidence may be sufficient to sustain the first proposition, that the mare was lawfully on the land, and the second proposition, that the crossing at which defendant maintained the gate was a necessary farm crossing, that the court erred in submitting these two propositions in the plaintiff's first instruction, as it did, without any other or further guide to the jury as to what would be necessary to render the mare lawfully on the premises, etc., and as to what were the requirements to render the crossing a necessary farm crossing. It is true that these are mixed questions of law and fact, which must be established by the evidence

and found by the jury under proper instructions when they are in issue in the case. There certainly could be no question where the plaintiff assumes the burden to establish the fact that his mare was lawfully at pasture on the lands, and an issue thereon is made up for the jury, and the fact, instead of being conceded, becomes a controverted fact, that in such case the court would be required to give the jury, by instructions, such enlightenment on the question of what would be a lawful occupancy under the circumstances, as would be proper to guide them in their deliberations thereon. And this is equally true in a case where the plaintiff assumes to establish that the farm crossing at which the gate in question was in use, was a necessary farm crossing, the matter being controverted on the trial. Inasmuch as it is a mixed question of law and fact, it would be error for the court to submit the same to the jury without proper instructions as to what would be a necessary farm crossing within the contemplation of the statute. And this is certainly as far as the adjudicated cases cited and relied upon by the appellant go on the question. [Miller v. Railway, 56 Mo. App. 72; Rowen v. Railway, 82 Mo. App. 24.] If they go beyond this, they are unsound and will not be followed.

It is evident this court intended no more than this in Miller v. Railway, supra, for the judgment in that case was affirmed when no such question had been submitted to the jury by instruction, the court saying that "both sides seem to have claimed that the controversy was one touching the sufficiency of the gate and not touching the question whether the defendant was bound to maintain a crossing." And in the case by the Kansas City Court of Appeals cited, Rowen v. Railway, supra, there certainly must have been an issue or something in the case which does not appear in the opinion calling for the rulings there made as we find the views of the same court in Freet v. Railway, 63 Mo. App. 548, on

this identical question, expressed by the same judge, contra thereto, and this case is not noticed in the Rowen case. Be that as it may, the law is well settled to the effect that when a fact in a case becomes established beyond peradventure and all parties thereafter deal with and treat it as uncontroverted, the court is authorized to treat it as counsel do, as an established and uncontroverted fact. All of the evidence tended to prove and did prove conclusively that the plaintiff's mare was lawfully in the pasture under an arrangement with Mr. Ince, the proprietor. No one disputed it. The same is true with respect to the crossing, the evidence showing conclusively that the railroad passed through and divided the meadow owned and controlled by one proprietor and under such circumstances as to render the crossing a necessary farm crossing within the contemplation of the statute and the adjudicated law on the subject. [Miller v. Railway, 56 Mo. App. 72.] The defendant, many years before, had recognized the fact that the farm crossing was necessary at that point, and so recognizing, had, in obedience to its obligation, constructed the same and the gates on either side of the track in connection therewith as well and no one at the trial, for it, intimated that such was not the fact. In truth, the facts of the mare being lawfully in the pasture and that the crossing was a necessary farm crossing, were treated by all parties concerned as uncontroverted facts, about which there was no question, the entire issue in the case being confined to the sufficiency of the fastenings on the gate, and as to what occasioned its opening at the time in question. Under the facts in this record, the court could have properly directed the jury as a matter of law, that plaintiff's mare was lawfully in the pasture and that the crossing at which defendant maintained the gate was a necessary farm crossing for the very sufficient reason that the facts indisputably established and uncontroverted, produce the

inevitable conclusion as a matter of law that the mare was lawfully on the lands and that the farm crossing was a necessary farm crossing within the contemplation of the statute. This being true, it was not essential for the court to submit those questions to the jury nor to give guiding directions thereon, for they were not issues in the case and it was not reversible error to submit such uncontroverted questions of law and fact. [Freet v. Railway, 63 Mo. App. 548; Miller v. Railway, 56 Mo. App. 72.]

The third point made against this instruction, is that it submitted to the jury the question whether the gate was opened because of the absence of a "hook or latch" thereon, without further instructing the jury what would constitute a hook or latch within the meaning of the statute. The instruction first defined the duty of the railroad in the precise language of the statute imposing it, and then requires the jury to find a breach of this duty and the plaintiff's loss consequent therefrom, in the following language: "And if you further believe that said mare got onto the said track and was crippled as above stated by reason of the failure and neglect, if any, of the defendant to provide and maintain the gate having the latch or hook as aforesaid, then your verdict must be for the plaintiff." The argument is pressed that the jury were misled by these words, inasmuch as the gate was not provided with either a hook or a latch, within the common acceptance of these terms, and that it was provided with a latch by means of the chain, etc. It is sufficient to say that the instruction, being in the language of the statute, as it is, was not error in that behalf, [Cooper v. Railway, 39 Mo. App. 489] although it would have been quite proper for the court to have given a further guide with respect to the sufficiency of the gate fastenings. If the defendant desired the jury to be further directed as to what would constitute a sufficient fastening within the mean-

ing of the words "hook" or "latch," it was competent for it to request the same, which it did, and the court instructed, at its request, as follows:

"2. The court instructs the jury that if you believe from the evidence that on the afternoon before plaintiff's horse was killed, he drove the railroad spike mentioned in evidence in the gate-post in question and that when the chain then on the gate was properly placed upon said spike the same constituted a fastening for said gate which was sufficient to keep the gate reasonably securely fastened under ordinary circumstances, then you cannot find for the plaintiff in this case and your verdict must be for the defendant.

"3. The court instructs the jury that it was not the duty of the defendant railway company to furnish a fastening for said gate that was absolutely secure under all circumstances; and the court further instructs you that if you believe from the evidence that after plaintiff, Ernest Roberts, fixed the gate on Sunday afternoon, September 18th, the same had a fastening so as to be . reasonably secure under ordinary circumstances, then your verdict should be for the defendant railway company."

This certainly gave the jury to understand that the question for it to decide was not whether the fastening was a hook or a latch in the ordinary acceptance of these words, i. e., the ordinary iron hook and staple, or a sliding latch, but was rather whether the gate was fastened at the time with such a sufficient fastening as to render it a reasonably secure panel of the right of way fence so as to withstand the wind, by which, the clear inference arising from the evidence is, it was opened. And by this instruction, defendant was given the benefit not only of the fastening it had provided, but the additional security of that furnished by plaintiff as well. This placed the matter before the jury

on most favorable terms to the defendant and it has no reason to complain.

2. The court refused to instruct at defendant's request, to the effect that if the gate was opened during the night by passers-by or third parties and permitted to remain open, whereby plaintiff's mare passed through the same onto the track, plaintiff could not recover. This action of the court is complained of as error. There is not a syllable of testimony in the record on which to predicate an instruction on this theory. The evidence all tends to show that no one passed through this gate save Mr. Ince, and he had not done so since the hay harvest, some time before. Had there been evidence tending to prove that parties frequently passed through and left the gate open and from which a reasonable inference to that effect might be drawn, as there was in the case relied upon by appellant, the instruction would have been proper enough. [Biniker v. Railway, 83 Mo. 660.] But inasmuch as there is no evidence in the case from which the inference may reasonably be drawn that the gate was opened by parties passing by, or by any cause, in fact, other than the very high wind which prevailed during the night, the court very properly refused the instruction. [Duncan v. Railway, 91 Mo. 67, 3 S. W. 835.] Courts should always, as the learned judge did in this case, confine the instructions to the facts in proof. Cases will not be reversed and remanded for the refusal of instructions requested on mere suppositions or suspicions of counsel, in no way traceable by legitimate inference to the record.

3. The question whether the gate was provided with a sufficient fastening was a fact for the jury and no doubt properly found by it. The point made that the court should have peremptorily directed a verdict for defendant on the evidence, as will appear by reading the statement of facts, is unworthy of the court's attention and will be overruled without comment.

119 App,—25

Finding no reversible error in the record, the judgment will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.